**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

DARRYL LLOYD WHITE,

*Petitioner*,

vs.

DWIGHT WAYNE NEVEN, *et al.*,

*Respondents*.

2:05-cv-00608-RLH-GWF

ORDER

This habeas action under 28 U.S.C. § 2254 comes before the Court on the respondents' second motion (#33) to dismiss on the basis of procedural default. Respondents contend: (1) that Grounds 7, 9, 10, 11, 12, 13(a) and 15 were procedurally defaulted because the claims were not raised on direct appeal; and (2) that Ground 5(a) is procedurally defaulted because it was not considered on post-conviction review under the law of the case doctrine.

***Background***

Petitioner Darryl Lloyd White seeks to set aside his 1999 conviction, pursuant to a jury verdict, for attempted murder with use of a deadly weapon and for child abuse and neglect.

The procedural default issues on the present motion turn, in the main, on what occurred on direct appeal with regard to White's proper person efforts to develop and present additional issues that had not been raised by his appellate counsel in the fast track statement of issues.

Petitioner's judgment of conviction was entered on November 23, 1999; and a notice of appeal was timely filed on or before December 23, 1999.[1]

White's initial appellate counsel was Lizzie Hatcher. She also had been trial counsel.

On July 10, 2000, Hatcher filed a motion for an extension of time within which to file the fast track statement, which sets forth the issues and argument on direct appeal or, in the alternative, to withdraw as counsel. On August 7, 2000, she filed a motion to withdraw as counsel. According to the description of the motions by the Nevada Supreme Court, Hatcher attested in support of the motions that White had the transcripts and would not forward them to her. She further attested that White appeared to be unhappy with her and refused to cooperate with her.[2]

On August 14, 2000, the Supreme Court of Nevada denied the motion to withdraw and granted the motion for an extension. The state high court noted that the transcripts had been on file in both that court and the state district court, and the court directed the district court to provide Hatcher another set of copies of the transcripts at state expense. The state high court directed that Hatcher file the fast track statement within forty days or show cause why she should not be sanctioned.[3]

Ultimately, Hatcher submitted a fast track statement that was stamped received in the Nevada Supreme Court on January 2, 2001, and filed on January 23, 2001. The statement did not include the claims set forth in federal Grounds 7, 9, 10, 11, 12, 13(a) and 15.[4]

On March 16, 2001, Hatcher filed another motion to withdraw as appellate counsel. On March 26, 2001,the Supreme Court of Nevada granted the motion, as Hatcher had

---

[1]#11, Ex. B. The notice at Exhibit C does not appear to be the notice of appeal from the judgment of conviction.

[2]#33, Ex. E1.

[3]*Id.*

[4]#11, Ex. D. Both the fast track statement and federal Ground 9 contend that a knife was admitted in error, but on different grounds. The statement claims that the knife was admitted in error because a chain of custody was not established. Ground 9 claims, *inter alia*, that the knife was false evidence because the knife in evidence did not match the knife that was impounded. The exhibit index lists the wrong date for Exhibit D.

complied with her obligation to file a fast track statement; and the court remanded the matter to the district court for the purpose of appointing replacement appellate counsel. The Nevada Supreme Court's order gave replacement counsel twenty days from the date of the appointment within which to file a supplemental fast track statement, if counsel determined that such a supplement was necessary.[5]

On April 25, 2001, the Supreme Court of Nevada received a proper person motion for appointment of new counsel from White. Petitioner had not been listed in the cc's on the high court's March 26, 2001, order. White asserted that Hatcher had left out crucial issues on the appeal in order to cover up her alleged trial ineffectiveness, and that he had been deprived of effective assistance of counsel on appeal. He maintained that Hatcher's fast track statement did not raise five of six issues that he wished to raise on appeal. He set forth the five omitted issues, with varying levels of specificity. White sought appointment of new counsel so that the additional issues could be addressed.[6]

Also on April 25, 2001, the state district court appointed William J. Taylor as appellate counsel. Taylor filed a notice of appearance in the state high court on April 30, 2001.[7]

On June 18, 2001, Taylor filed a motion for a ninety day enlargement of time to file a supplemental fast track statement. He attested that he had received the complete files from the district court and state supreme court. He further attested that he had reviewed the documents and that he had had conversations with White.[8]

On June 21, 2001, the Supreme Court of Nevada granted a thirty day extension of time. #33, Ex. E7.

---

[5]#33, Ex. E3.

[6]#33, Ex. E2. The motion refers to previous proper person documents submitted by White in the Nevada Supreme Court on the appeal, but copies of any such documents have not been filed herein. It nonetheless appears that the Court has a sufficient record upon which to address the procedural default issues. The Court has White's later July 30, 2001, statement of his claims, which appears to be the most extensive statement of his proper person claims that he made during the direct appeal.

[7]#33, Exhs. E4 & E5.

[8]#33, Ex. E6.

On July 23, 2001, Taylor filed a response to the June 21, 2001, order. Counsel stated that "based on the information presently in the possession of current appellate counsel, there is presently no material issue to be considered that was not raised in the original fast track statement." He stated, however, that White had directed him to request an additional sixty day extension to file a supplemental fast track statement. Counsel stated that "Mr. White is concerned that additional documentation and information needs to be acquired before a determination can be made concerning a supplemental fast track statement."[9]

The Court notes that the Supreme Court of Nevada at this point was being presented with an essentially proper person request for an extension of time to state the issues on appeal – "in order to acquire additional documentation and information" – in a case that already had been tried to a final judgment of conviction, that had been pending on appeal for over a year-and-a-half, and that would be reviewed on direct appeal solely on the existing trial court record.

On July 30, 2001, the Supreme Court of Nevada received a proper person "Judicial Notice" from White. The prayer in this document requested that the court "grant Attorney Taylor and Appellant's request for sixty additional days, so that Appellant may complete his Brief, so that ALL of this appellants [sic] issues may be addressed." White asserted that Taylor's July 23, 2001, filing was false and misleading and that new appellate counsel was depriving him of the opportunity to present additional issues that he was requesting. White attested: (1) that Taylor had asked him to forward any additional issues that he had as soon as possible; (2) that he had told Taylor that it would be impossible to complete "the document" because his prison law library access was limited to one hour per day; and (3) that Taylor had informed him that there were additional issues that could be raised, but that counsel would have to obtain documents from trial counsel and trial counsel had not returned his numerous calls. White attached a "rough draft copy of the document I am now preparing for attorney Taylor, and this Court for review." He stated that "it is simply my rough draft copy" and that

---

[9] #33, Ex. E8.

he "simply just want[ed] to give this Court a general idea of the issues I want addressed on my appeal." He stated that he did not want the case decided on the fast track statement then before the court. He accordingly asked for the sixty day extension "so that I may have ample time to prepare this document, professionally, so that there will be no question as to what occurred before and during my trial proceeding."[10]

The attached rough draft copy contained preliminary draft argument – by White in proper person rather than by his second appointed appellate counsel – corresponding to federal Grounds 7, 9, 10, 11, 12 and 13. Draft Argument I, similar to federal Ground 10, asserted that the State had engaged in prosecutorial misconduct by presenting known perjured testimony by the then ten-year-old witness Janai Shelton. Draft Argument II, similar to Ground 11, asserted that the lead detective had used coercive and suggestive techniques in interviewing Janai Shelton. Draft Argument III, similar to Ground 9, asserted, *inter alia*, that the State had knowingly used false evidence because the knife received in evidence, allegedly a black-handled butcher knife, did not match a description of the knife that was impounded, allegedly a brown-handled steak knife. Draft Argument IV, similar to Ground 12, asserted that the State failed to correct testimony by Joya Shelton and Detective Laura Anderson known by the State to be false and/or perjured. Draft Argument V, similar to Ground 13, asserted that the trial court, prosecutor and his defense counsel prohibited White from cross-examining Detective Anderson and attempting to impeach her with an alleged inconsistent statement in a police arrest report. Draft Argument VII (mislabeled as such), similar to Ground 7, asserted that White was denied his Sixth Amendment right to confrontation when the trial court allowed the transcript of Shonda Carlton's preliminary hearing testimony to be read to the jury at trial.[11]

/ / / /

---

[10]#26, Ex. E, at 1-4 (emphasis in original).

[11]#26, Ex. E, parts 1 and 2. There are no gaps in White's own page-numbering on the rough draft that would suggest that a Draft Argument VI was inadvertently omitted from the exhibit filed by respondents.

The rough draft copy did not contain any preliminary draft argument corresponding to federal Ground 15, which asserts, *inter alia*, claims of insufficient evidence and cumulative error. White had made only a conclusory reference to a possible insufficient evidence claim in his earlier April 25, 2001, motion for appointment of new counsel.[12]

White's proper person July 30, 2001, notice accordingly was requesting that the Supreme Court of Nevada grant an additional sixty day extension – well after the delays for stating the issues on appeal had passed – so that the represented appellant could do his own research in the prison law library and develop and present additional issues, as opposed to his simply identifying potential issues for his appointed appellate counsel to consider.

Seven days later, on August 6, 2001, the Supreme Court of Nevada denied the request for a sixty day extension to present additional issues, stating in pertinent part:

> On July 23, 2001, appellant's counsel filed a response to this court's order in which counsel informs this court that there are not material issues to be considered that were not raised in the original fast track statement. Counsel further informs this court that he "has been directed by his client to move for another extension of time to file a supplemental fast track statement." No good cause having been shown, the motion for an additional extension of time is denied. This appeal shall stand submitted as of the date of this order, on the record and briefs filed herein.

#26, Ex. F (also filed at #33, Ex. E9)(rule citation footnote omitted).

Two days later, on August 8, 2001, the Supreme Court of Nevada issued a seven-page order affirming the judgment of conviction. The order discussed only the three issues raised in the fast track statement. One of the three issues addressed was whether the state trial court had violated N.R.S. 48.045(2) when it allowed prior bad act evidence, a claim of trial error that is related to federal Ground 5(a). #11, Exhs. D & F.

The final footnote at the end of the order stated:

> We have considered all proper person documents filed or received in this matter, and we conclude that the relief requested is not warranted.

#11, Ex. F, at 7 n.12.

---

[12] #33, Ex. E2, at 5.

The relief requested in the most recent proper person document, filed only nine days previously, had been for an extension of sixty days so that White could complete a proper person brief to raise additional issues in the state supreme court.

On or about August 28, 2002, White filed a state post-conviction petition. Respondents do not dispute that White presented the substance of the claims of trial error and/or prosecutorial misconduct in federal Grounds 5(a), 7, 9, 10, 11, 12, 13(a) and 15 in the state court petition. Federal Ground 13 was designated as Ground 6 in the state petition; but, otherwise, the numbering was the same on these particular claims.[13]

Ultimately, on September 3, 2004, following a remand from the Nevada Supreme Court for a written order, the state district court issued written findings of fact, conclusions of law, and an order denying the state petition. In pertinent part, the state district court held that:

(1) "Defendant's allegation of constitutional error in ground 5 is barred by the doctrine of law of the case as it was already addressed by the Nevada Supreme Court," under *Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975);

(2) "Defendant's allegations of constitutional error in grounds 7, 9, 10, 11, 12, 15 and a portion of 6 [federal Ground 13(a)] could have been presented on direct appeal," and therefore were subject to the bar in N.R.S. 34.810(1)(b);

(3) "Defendant has not shown good cause for the failure to present the grounds on direct appeal or actual prejudice to overcome the implied waiver of the issues;" and

(4) White had failed to demonstrate either deficient performance or resulting prejudice on his claims of ineffective assistance of trial and appellate counsel.

#11, Ex. L.

---

[13]#11, Ex. H.

On April 19, 2005, the Supreme Court of Nevada affirmed.

Prior to addressing the petitioner's claims of ineffective assistance of counsel that paralleled the barred claims of trial error and prosecutorial misconduct, the court stated the following in a footnote:

> To the extent that White raised any of the following issues independently from his ineffective assistance of counsel claims, we conclude that they are waived; they should have been raised on direct appeal and White did not demonstrate good cause for his failure to do so. See NRS 34.810(1)(b).

#11, Ex. P, at 2 n.4.

With regard to Ground 5(a), the state high court held as follows:

> Finally, White claimed that the district court err[ed] in admitting evidence of a prior threat he made to Shelton. This court already considered and rejected this claim on direct appeal, however. The doctrine of the law of the case prevents further litigation of this issue and "cannot be avoided by a more detailed and precisely focused argument."[FN22] Thus, the district court did not err in denying this claim.]
>
> [FN22] Hall v. State, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975).

*Id.*, at 12.

On or about April 26, 2005, White mailed the present federal petition for filing.

***Governing Law***

Under the procedural default doctrine, federal review of a habeas claim may be barred if the state courts rejected the claim on an independent and adequate state law ground due to a procedural default by the petitioner. Review of a defaulted claim will be barred even if the state court also rejected the claim on the merits in the same decision. Federal habeas review will be barred unless the petitioner can demonstrate either: (a) cause for the procedural default and actual prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will result in the absence of review. *See,e.g.,Bennet v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must establish that some external and objective factor impeded his efforts to comply with the state's procedural rule.

*E.g., Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Hivala v. Wood*, 195 F.3d 1098, 1105 (9th Cir. 1999). To satisfy the prejudice requirement, he must show that the alleged error resulted in actual harm. *E.g., Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Both cause and prejudice must be established. *Murray*, 477 U.S. at 494, 106 S.Ct. at 2649.

A petitioner may demonstrate cause by showing that the default resulted from a constitutional deprivation of effective assistance of counsel under the *Strickland*[14] standard. *See,e.g., Murray*, 477 U.S. at 488, 106 S.Ct. at 2645; *Cockett v. Ray*, 333 F.3d 938, 943-44 (9th Cir. 2003); *Hivala*, 195 F.3d at 958. The petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's alleged unprofessional errors, the outcome of the proceeding would have been different. *See,e.g., Cockett*, 333 F.3d at 944. Attorney ignorance or inadvertence will constitute cause for default only if it rises to the level of constitutionally ineffective assistance of counsel under the *Strickland* standard. *Id.*

***Discussion***

***Procedural Default of Grounds 7, 9, 10, 11, 12, 13(a) and 15 Under NRS 34.810(1)(b)***

The Supreme Court of Nevada held that the claims of trial error and prosecutorial misconduct in Grounds 7, 9, 10, 11, 12, 13(a) and 15 were procedurally defaulted under N.R.S. 34.810(1)(b) because the claims were not raised on direct appeal.

White contends that N.R.S. 34.810(1)(b) is not an adequate state law ground because it allegedly is applied inconsistently on a discretionary basis. However, the Ninth Circuit held in *Vang v. Nevada*, 329 F.2d 1069 (9th Cir. 2003), that the Nevada Supreme Court applied this very same rule under N.R.S. 34.810(1)(b) consistently in noncapital cases during the period in question there, from 1988 through 1991. 329 F.3d at 1073-74. The relevant time period in this case is the time between the filing of petitioner's appeal on or after November 29, 1999, and the time when he filed his state post-conviction petition, on August 28, 2002. *Id.*

---

[14] *Strickland v. Washington*, 466 U.S. 668, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Petitioner has not come forward with any apposite case law indicating that the Nevada Supreme Court applied N.R.S. 34.810(b)(1) inconsistently in noncapital cases at any time after the 1988-1991 period considered in *Vang* and in particular during the 1999-2002 period at issue here. His citation to the Nevada Supreme Court's 2001 decision in *Pellegrini v. Nevada*, 117 Nev. 860, 34 P.3d 519 (2001), is particularly unavailing because the state high court went to great lengths in *Pellegrini* to establish that the statutory procedural bars, including N.R.S. 34.810(b)(1), are applied consistently.

The Court therefore concludes that N.R.S. 34.810(b)(1) was applied consistently by the Supreme Court of Nevada during the period in question, from 1999 through 2002; and the Court accordingly holds that the procedural bar constitutes an adequate state law ground. The Court is not persuaded by the petitioner's remaining arguments to the contrary in this regard.[15]

White next urges that the Supreme Court of Nevada did not explicitly invoke the N.R.S. 34.810(b)(1) procedural bar. Yet the high court expressly invoked the N.R.S. 34.810(b)(1) procedural bar for the claims of error independent from petitioner's ineffective assistance of counsel claims, and the state district court's order specified the numbered grounds as to which the bar applied. Ninth Circuit law establishes that the Supreme Court of Nevada adequately invoked the procedural bar in this manner:

> For example, if the order affirms a previous lower court order that relies on the same grounds and specifies which grounds are applicable to which claims, there is no reason to assume that the appellate court applied different grounds to different claims.

*Koerner v. Grigas*, 328 F.3d 1039, 1052 (9th Cir. 2003). The Court therefore holds that the procedural bar was adequately invoked in this case.

White's principal argument is that the Supreme Court of Nevada "bypassed" the procedural bar because it considered the claims on the merits on direct appeal, when it allegedly considered the rough draft arguments attached to his proper person July 30, 2001,

---

[15] See #42, at 14-17 & 20-21.

"judicial notice." He maintains that the Nevada Supreme Court's statement that "[w]e have considered all proper person documents filed or received in this matter" signifies that it considered the issues in the rough draft arguments as being raised on direct appeal.

The initial, and substantial, hurdle that faces White on this argument is that the state courts, including, in particular, the Supreme Court of Nevada, found that the issues were not raised on direct appeal. State court factual findings are subject to deferential review under 28 U.S.C. § 2254(d)(2) as well as 28 U.S.C. § 2254(e)(2), with the latter provision establishing a presumption of correctness that can be rebutted by the petitioner only on a showing of clear and convincing evidence. These rules of deferential review of state court factual findings apply to factual findings by state appellate courts as well as to findings by state trial courts. *See,e.g., Little v. Crawford*, 449 F.3d 1075, 1077 n.1 (9th Cir. 2006). Given that the factual determination in question here is a factual determination by the Supreme Court of Nevada regarding its own records, the basis for such deference would appear to be all the more compelling.

In any event, even without such deferential review, this Court has no difficulty concluding that the Supreme Court of Nevada did not consider White's proper person preliminary rough draft arguments on direct appeal. The Court reviewed the procedural history surrounding petitioner's proper person filings in detail and at length above.[16] Following this review, this Court has no doubt whatsoever that the Supreme Court of Nevada was denying White's request for additional time to prepare and present his own proper person arguments – in a case where he was represented by appointed appellate counsel, two successive counsel essentially had indicated that there were no more material issues to be presented, and the time normally allowed for presenting issues on appeal under state appellate procedure long since had passed. The proper person "relief requested" that was denied in the Nevada Supreme Court's final footnote was White's request for further delay to present his still-to-be-developed proper person arguments on a represented appeal.

---

[16] See text, *supra*, at 2-7.

The fact that the Supreme Court of Nevada issued its order of affirmance only two days after it rejected the request for a sixty day extension to file a supplemental fast track statement -- which was being sought at White's direction specifically for the purpose of presenting additional proper person issues -- underscores the fact that the state high court was firmly rejecting consideration of proper person issues in addition to the issues presented by appointed counsel in the fast track statement. Otherwise, quite simply, the Nevada Supreme Court would have granted the request for more time to file a supplemental fast track statement and directed that the State respond thereto, thereby allowing for the expansion of the issues to be considered on appeal. The state high court instead rejected all requests for more time and then proceeded immediately to resolve the three issues presented in the fast track statement, and only those issues.

The Court accordingly holds that the Supreme Court of Nevada did not bypass the procedural bar and consider the claims on direct appeal. Petitioner's strained contrary reading of the state court record is unpersuasive.[17]

Grounds 7, 9, 10, 11, 12, 13(a) and 15 therefore are barred by procedural default unless petitioner can demonstrate cause and prejudice.

Petitioner maintains that he can demonstrate cause and prejudice excusing any procedural default of these claims due to alleged ineffective assistance of his counsel on direct appeal.

When ineffective assistance of counsel is relied upon to excuse a procedural default, the constitutional ineffective assistance claim first must have been presented to the state courts as an independent claim before it may be used to establish cause for default. *E.g., Murray,* 477 U.S. at 488-89, 106 S.Ct. at 2645-46; *Cockett*, 333 F.3d at 943. The Supreme Court of Nevada directly addressed claims by White of ineffective assistance of appellate counsel in failing to raise the claims in federal Grounds 10, 11, 12 and 15. #11, Ex. P, at 11.

---

[17]Moreover, over and above foregoing, federal Ground 15 clearly was not included in White's rough draft arguments. Thus, even under his reading of the record, Ground 15 was not considered on direct appeal by the Supreme Court of Nevada.

Petitioner therefore clearly satisfied this threshold requirement that the ineffective assistance of counsel claim first must have been presented to the state courts as an independent claim with respect to these four grounds.

The Court accordingly will defer further consideration of whether Grounds 10, 11, 12 and 15 are barred by procedural default until it has had an opportunity to address, with resort to a more complete state court record, the parallel claims of ineffective assistance of appellate counsel directly addressed by the Supreme Court of Nevada.

It is less clear, however, whether petitioner presented independent claims – in both the state district court and the Supreme Court of Nevada[18] – of ineffective assistance of appellate counsel for failure to raise the claims in federal Grounds 7, 9 and 13(a). Petitioner included independent ineffective assistance claims in his state post-conviction petition and supporting memorandum that were based upon alleged failures of Hatcher and Taylor to communicate and cooperate with him during the direct appeal. However, within those independent ineffective assistance claims, he did not specifically identify the claims in Grounds 7, 9 and 13(a) as claims that would have been raised but for the alleged ineffective assistance of appellate counsel.

While the record is less clear regarding these specific claims, the Court exercises its discretion also to defer further consideration at this juncture of whether Grounds 7, 9 and 13(a) are barred by procedural default. The Court will assume, *arguendo*, at present that the independent ineffective assistance claims based upon appellate counsel's general failure to communicate with petitioner can be relied upon to establish cause for the failure to raise these specific claims on direct appeal.

***Procedural Default of Ground 5(a) Under the Law of the Case Doctrine***

To briefly summarize the prior discussion on this claim, counsel raised a claim on direct appeal that the state trial court violated N.R.S. 48.045(2) when it allowed prior bad act

---

[18] The Supreme Court of Nevada declined to consider any claims or facts that were not presented to the state district court. #11, Ex. P, at 13 n.24.

evidence. In his state post-conviction petition, White sought to federalize this claim by including allegations that the admission of the evidence violated federal constitutional rights to a fair trial and due process of law. The state district court held that White's "allegation of constitutional error in ground 5 is barred by the doctrine of law of the case." The Supreme Court of Nevada affirmed this district court holding, noting that the law of the case doctrine could not be avoided by a more detailed and precisely focused argument, relying upon *Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975).

If the state courts had relied upon Nevada law of the case doctrine to preclude relitigation of constitutional claims that already had been actually raised and rejected previously on the direct appeal, the application of such a relitigation bar would have had no effect on federal habeas review. In such a situation, the constitutional claims actually raised on appeal would have been exhausted and adjudicated on the merits; and the claims therefore would be subject to federal habeas review notwithstanding a later refusal to again consider the constitutional claims later on state post-conviction review. *See Calderon v. United States District Court*, 96 F.3d 1126, 1131 (9th Cir. 1996). In this case, however, the corollary of the Nevada law of the case doctrine that was relied upon by the Nevada Supreme Court bars new legal arguments that were not actually presented on direct appeal but that were based on substantially the same facts as the argument made on appeal. *See Hall*, 535 P.2d at 315 ("The law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same.") Such a rule – which bars constitutional legal claims on post-conviction review that could have been, but were not, raised in a prior claim on direct appeal that was based on substantially the same facts – constitutes a procedural default bar, not a mere bar against relitigation. *See Calderon, supra.*

Petitioner has not come forward with any apposite case law indicating that the Nevada Supreme Court applied the law of the case doctrine inconsistently in noncapital cases at any time during the 1999-2002 period at issue here. The Court accordingly holds that the Nevada law of the case procedural bar to the presentation of new legal grounds on the same facts constitutes an adequate state law ground.

Petitioner maintains that he can demonstrate cause and prejudice excusing any procedural default of Ground 5(a) due to alleged ineffective assistance of his counsel on direct appeal. He asserts that appellate counsel neglected to raise the federal constitutional law claims when the admission of the evidence was challenged on direct appeal. #42, at 16.

Petitioner's claim of cause and prejudice as to Ground 5(a) stands on a weaker footing than his claim of cause and prejudice as to Grounds 7, 9 and 13(a). As with these latter claims, White did not specifically identify the constitutional claims in Ground 5(a) in any of his independent ineffective assistance claims as claims that would have been raised but for the alleged ineffective assistance of appellate counsel. The claim of cause and prejudice as to the constitutional claims in Ground 5(a) stands on an even weaker footing because White did not include these constitutional claims in his July 30, 2001, rough draft arguments that he stated during the direct appeal that he wanted considered. Thus, any connection would appear to be far more tenuous between the ineffective assistance claims based upon a failure to communicate and the failure to present the constitutional claims in Ground 5(a).

However, out of an abundance of caution, the Court will exercise its discretion also to defer further consideration at this juncture of whether Ground 5(a) is barred by procedural default. The Court will assume, *arguendo*, at present that the independent ineffective assistance claims based upon appellate counsel's general failure to communicate with petitioner can be relied upon to establish cause for the failure to raise the constitutional claims in Ground 5(a) on direct appeal.

IT THEREFORE IS ORDERED that respondents' motion (#14) to dismiss is DENIED without prejudice to the continued assertion of the procedural default defense to Grounds 5(a), 7, 9, 10, 11, 12, 13(a) and 15 in these proceedings.

IT FURTHER IS ORDERED that, taking into account the number of claims presented, respondents shall have sixty (60) days after entry of this order within which to file an answer, together with all further state court record materials required under Habeas Rule 5. The answer need not respond directly to Grounds 5(a), 7, 9, 10, 11, 12, 13(a) and 15. However, the answer shall address, in regard to each such claim, whether petitioner was denied

effective assistance of appellate counsel by counsel's failure to raise such claim on direct appeal. Respondents in particular shall provide sufficient record citation and legal argument on the underlying claim to enable the Court to determine, *inter alia*, whether there was a reasonable probability that the assertion of the underlying claim on direct appeal would have affected the outcome on appeal.

IT FURTHER IS ORDERED that petitioner may file a reply to the answer within sixty (60) days of service of the answer.

IT FURTHER IS ORDERED that no waiver of the procedural default defense shall result from any discussion by respondents in the answer related to Grounds 5(a), 7, 9, 10, 11, 12, 13(a) and 15.

DATED this 23rd day of February, 2007.

ROGER L. HUNT
Chief United States District Judge